## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **YESENIA HERNANDEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **MICHAEL J. ASTRUE, Commissioner** | § | **SA-09-CV-0484 OG (NN)** |
| **of the Social Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

**TO:   Honorable Orlando Garcia**
        **United States District Judge**

### Introduction

Plaintiff Yesenia Hernandez brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Hernandez is not disabled for the purposes of the Social Security Act (the Act) and denying Hernandez's applications for Disability Insurance Benefits and Supplemental Security Insurance (SSI).  Hernandez asked the district court to reverse the Commissioner's decision and to render judgment in her favor.  In the alternative, Hernandez asked the district court to reverse the decision and remand the case for further proceedings.

After considering Hernandez's brief in support of her complaint,[1] the brief in support of the Commissioner's decision,[2] the record of the SSA proceedings, the pleadings on file, the

---

[1]Docket entry # 12.

[2]Docket entry # 14.

applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[3]

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

Based on the record in this case, Hernandez exhausted her administrative remedies prior to filing this action in federal court. Hernandez applied for benefits September 29, 2006, alleging disability beginning on February 1, 2006.[4]  There is no event or condition associated with the on-set date.  Hernandez sought benefits based on depression and attention deficit hyperactivity disorder (ADHD).[5]  The Commissioner denied the application initially and on reconsideration.[6]  Hernandez then sought a hearing before an ALJ.[7]  An ALJ held a hearing on May 8, 2008.[8]  The

---

[3]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[4]SSA record, p. 77.

[5]*Id*. at p. 99.

[6]*Id*. at pp. 34-37.

[7]*Id*. at p. 55.

[8]*Id*. at p. 18.

ALJ issued a decision on September 23, 2008, concluding that Hernandez is not disabled within the meaning of the Act.[9]  Hernandez asked the Appeals Council to review the decision.  On April 10, 2009, the Appeals Council declined to review the decision, determining no reason existed for a review.[10]  The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g).  Hernandez initiated this action on June 15, 2009, by asking to proceed in forma pauperis.[11]

## Issue Presented

Is the ALJ's decision that Hernandez is not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

## Analysis

**A. Standard of Review**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[12]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13]  Substantial evidence

---

[9]*Id*. at p. 8.

[10]*Id*. at p. 1.

[11]Docket entry # 1.

[12]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[13]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

"must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[14]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[15]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[16]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[17]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[18]

**1. Entitlement to Benefits**

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[19]  The term

---

[14]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[15]*Martinez*, 64 F.3d at 173.

[16]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[17]*Martinez*, 64 F.3d at 174.

[18]*Id*.

[19]42 U.S.C. § 1382(a)(1) & (2).

4

"disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[20]  A claimant shall be determined to be disabled only if her physical or mental impairment or impairments are so severe that she is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for work.[21]

### 2. Evaluation Process and Burden of Proof

The Commissioner's regulations provide that disability claims are to be evaluated according to a five-step process.[22]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[23]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[24]  If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[25]  The second step involves

---

[20]42 U.S.C. § 1382c(a)(3)(A).

[21]42 U.S.C. § 1382c(a)(3)(B).

[22]20 C.F.R. §§ 404.1520 and 416.920.

[23]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[24]20 C.F.R. §§ 404.1520 and 416.920.

[25]*Id.*

determining whether the claimant's impairment is severe.[26]  If it is not severe, the claimant is

deemed not disabled.[27]  In the third step, the Commissioner compares the severe impairment with

those on a list of specific impairments.[28]  If it meets or equals a listed impairment, the claimant is

deemed disabled without considering her age, education, or work experience.[29]  If the impairment

is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional

capacity and the demands of her past work.[30]  If the claimant is still able to do her past work, the

claimant is not disabled.[31]  If the claimant cannot perform her past work, the Commissioner

moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities,

age, education, and work experience, to do other work.[32]  If the claimant cannot do other work,

she will be found disabled.  The claimant bears the burden of proof at the first four steps of the

sequential analysis.[33]  Once the claimant has shown that she is unable to perform her previous

work, the burden shifts to the Commissioner to show that there is other substantial gainful

employment available that the claimant is not only physically able to perform, but also, taking

into account her exertional and nonexertional limitations, able to maintain for a significant period

---

[26]*Id.*

[27]*Id.*

[28]*Id.*

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Leggett*, 67 F.3d at 564.

of time.[34]  If the Commissioner adequately points to potential alternative employment, the burden

shifts back to the claimant to prove that she is unable to perform the alternative work.[35]

**B. Findings and Conclusions of the ALJ**

In this case, the ALJ reached his decision at step two of the decision-making process.  At

step one, the ALJ determined that Hernandez had not engaged in substantial gainful activity since

her alleged on-set date.[36]  At step two, the ALJ determined that Hernandez does not have an

impairment or combination of impairments that significantly limits her ability to perform basic

work activities;[37] that is, the ALJ determined that Hernandez does not have a severe

impairment.[38]  Based on that determination, the ALJ concluded that Hernandez is not disabled.[39]

**C. Hernandez's Allegation of Error**

Hernandez based her disability application on depression and ADHD.[40]  Hernandez

argued that the ALJ failed to apply the appropriate legal standards in determining whether her

depression and ADHD are severe impairments.  The Commissioner's regulations define a severe

impairment as one that significantly limits the claimant's physical or mental ability to do basic

---

[34]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[35]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[36]SSA record, p.13.

[37]*Id*. at p. 14.

[38]*Id*. at p. 17.

[39]*Id*.

[40]*Id*. at p. 99.

work activities.[41]  "An impairment or combination of impairments is not severe if it does not

significantly limit [the claimant's] physical or mental ability to do basic work activities."[42]  "An

impairment can be considered as not severe only if it is a slight abnormality having such minimal

effect on the individual that it would not be expected to interfere with the individual's ability to

work, irrespective of age, education or work experience."[43]  Hernandez suggests the ALJ did not

apply these standards,[44] but the ALJ recited the standards in his decision.[45]  In determining that

Hernandez's mental impairment is not severe, the ALJ wrote: "The claimant does not have an

impairment or combination of impairments that has significantly limited (or is expected to

significantly limit) the ability to perform basic work-related activities for 12 consecutive months.

. . ."[46]

     If the ALJ determines the claimant has a medically determinable mental impairment, the

ALJ must first specify the symptoms, signs, and laboratory findings that substantiate the presence

of the impairment and document the ALJ's finding.[47]  The following excerpt from the ALJ's

opinion shows that the ALJ specified the symptoms, signs, and laboratory findings substantiating

---

[41]See 20 C.F.R. §§ 404.1520(c), 416.921(a).

[42]20 C.F.R. §§ 404.1521(a), 416.921(a).

[43]Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985) (citation omitted; alteration included).

[44]Docket entry # 12, p. 6 ("The issue presented in the case at bar is whether the ALJ failed to apply the appropriate legal standards in finding that Ms. Hernandez suffers from 'no severe' impairment at all.").

[45]SSA record, p. 14.

[46]Id. at p. 13.

[47]20 C.F.R. § 416.920a(b)(1).

the presence of an impairment:

The claimant's treating psychiatrist, Jose M. Hernandez, M.D., diagnosed the claimant with depressive disorder, NOS and panic disorder without agoraphophia based on an initial psychiatric evaluation of August 21, 2006.  The claimant was placed on an antidepressant, Fluoxetine (Exhibit 8E/14-15).  On follow-up of September 8, 2006, the clamant was prescribed Focalin in response to complaints of ADHD and reported doing quite well on follow up of October 18, 2006.  By December 21, 2006, the clamant was noted to be doing well at school and Dr. Hernandez's assessment indicated she was improving.  The claimant was noted to be doing well in pursuing her General Equivalency Diploma on July 5, 2007.  Dr. Hernandez's assessment on August 3, 2007 was "some symptoms."  The claimant reported on October 12, 2007 that she had discontinued the Fluoxetine on her own initiative and was feeling tired with a decrease in energy, but was doing well in school.  On November 16, 2007, the claimant indicated she as doing well and Dr. Hernandez' final assessment of her impairments was noted as stable (Exhibits 8F/1-15 and 9F/1-5).

The claimant changed physicians due [to Dr. Hernandez's departure] and the only treatment record from the claimant's current treating psychiatrist, Jeffrey S. Steward, M.D., is an initial psychiatric evaluation dated March 5, 2008.  The claimant presented with complaints of problems focusing, decreased memory, decreased motivation, isolative behavior, crying episodes, depression and poor concentration.  The claimant's mental status examination indicated no hallucinations or delusions and her concentration appeared adequate based on serial 3's and "world" spelling.  Dr. Steward's diagnoses were major depressive disorder, NOS, moderate, without psychotic features and ADHD and prescribed an increased dose of Fluozetine and substituted Strattera for Focalin.  The claimant was assessed a GAF of 50 and instructed to return in 4 weeks (Exhibit 12F/1-5).

At the request of the undersigned, the claimant attended a post hearing consultative psychological evaluation and testing with Russel Thompson, Ph.D., on July 15, 2008.  The evaluation report has been entered into evidence as Exhibit 13F and proffered to the claimant's attorney for his review and comments.  As of the date of this decision, there has been no response from the attorney.  Dr. Thompson noted that the claimant was almost completely uncommunicative throughout much of the interview, put forth very poor effort, exaggerated her deficits, was very uncooperative with testing attempts, and her behavior during the evaluation was described as either psychotic or an intentional attempt to misrepresent her mental state.  Dr. Thompson noted that the medical records from the claimant's psychiatrists and counselors did not indicate psychotic or anxious behavior such as that exhibited during the evaluation and there was no indication

9

of recent head trauma which would indicate a new onset of symptoms. Dr. Thompson was unable to assess the claimant's current level of functioning in the areas of activities of daily living (however, claimant did report she as a single parent with two young children in her care), social functioning (a friend accompanied her to the evaluation), concentration, persistence, or pace, and decompensation. The claimant indicated that she was unemployed because she stayed home to care for her young child who was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD). The record, to include testimony of the claimant, indicates this child is of school age. Dr. Thompson's diagnostic impressions were ADHD (by history), depressive disorder, NOS (by history). He assessed the claimant with a GAF of 20, based on her behavior during the evaluation, but noted that on March 5, 2008, her GAF to be 50, without evidence of a traumatic injury or episode to account for the large discrepancy in functioning levels. Based on the narrative provided by Dr. Thompson, the undersigned Administrative Law Judge concludes that the evaluation is not a valid and fair assessment of the severity of the claimant's impairments as she misrepresented and exaggerated his symptoms, and is indicative of malingering (Exhibit 13F/1-13).[48]

This passage satisfied the ALJ's duty to specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment because the passage discusses just about everything in the record. Hernandez's medical record is very brief because she did not seek treatment for depression or ADHD until six months after her alleged on-set date, one month before applying for benefits. The treatment notes consist of little more than Hernandez's complaints, Dr. Hernandez's observations about improvement, and prescriptions for psychotropic drugs.[49]

After specifying the symptoms, signs, and laboratory findings substantiating the presence of a mental impairment, the ALJ must rate and record the degree of functional limitation resulting from the impairment based on four areas: activities of daily living; social functioning;

---

[48]SSA record, p. 15-16.

[49]See id. at pp. 170-174, 251-258 & 265-67.

concentration, persistence, or pace; and episodes of decompensation.[50]  The following passage

from the ALJ's opinion shows that the ALJ accomplished this task:

> The first functional area is activities of daily living.  In this area, the claimant has mild limitation.  Although the claimant indicates that she requires assistance from family members to take care of her toddler, perform household chores, remind her to take care of personal chores, etc., the record does not indicate an impairment that rises to the level of incapacitation as alleged by the claimant.  The claimant maintains a checking account for receipt of her son's Supplemental Security Income check (as the representative payee), goes grocery shopping, and was actively attending classes to obtain her GED (Exhibits 8F, 9F, and 13F).
>
> The next functional area is social functioning.  In this area, the claimant has mild limitation.  Although the claimant alleges social withdrawal and isolation, the undersigned notes that the record indicates she has a boyfriend, a friend who accompanied her to the consultative evaluation, attended classes for her GED, and is able to deal with retail store clerks during shopping trips (Exhibits 8F, 9F, and 13F).
>
> The third functional area is concentration, persistence or pace.  In this area, the claimant has mild limitation.  Although the claimant has alleged difficulty in maintaining concentration, persistence, or pace, it is difficult to ascertain the true level of difficulty based on the claimant's behavior during the consultative examination (Exhibit 13F).  The claimant was noted to have adequate concentration by her treating physician on March 5, 2008 as evidenced by her ability to perform serial 3's and the spelling of "world" test (Exhibit 12F/1-5).  The record indicates that the claimant was actively pursuing her GED and reported doing well in this endeavor on multiple occasions (Exhibits 8F and 9F).
>
> The fourth functional area is episodes of decompensation.  In this area, the claimant has experienced no episodes of decompensation.  The claimant's behavior at the consultative evaluation indicates that she has experienced an episode of deterioration/decompensation in her functioning level.  However, the claimant's uncooperative and exaggerated behavior, as reported in detail by the evaluator, renders this assessment invalid.  The record does not indicate that the claimant suffered a traumatic event that would so drastically affect her functioning level from March 2008 to July 2008 (Exhibit 12F).
>
> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no"

---

[50]20 C.F.R. § 416.920a(c).

limitations in the fourth area, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920(d)(1)).[51]

Because the ALJ rated the required areas, the next question is whether substantial evidence supports the ratings.

Activities of daily living.  "*Activities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [personal] grooming and hygiene, using telephones and directories, and using a post office."[52]  When Hernandez applied for benefits, she reported caring for her two children, taking her son to school, cooking meals, taking care of her personal grooming, cleaning her apartment, doing the family laundry, shopping for groceries, paying bills, taking her daughter to the park, visiting her sister, and being able to follow written and oral instructions.[53]  Shortly thereafter, although she complained about problems with concentration, Hernandez reported to an agency representative that she handled money, cashed her son's SSI check, and maintained a checking account.[54]  Throughout her treatment with Dr. Hernandez, Hernandez reported attending GED classes.  This evidence constitutes substantial evidence supporting the ALJ's finding that Hernandez is mildly restricted in activities of daily living.  Although Hernandez testified that she is disabled because of ADHD,[55] the ALJ found that Hernandez's statements

---

[51]SSA record, pp. 16-17.

[52]20 C.F.R. pt. 404, subpt. B, app. I, § 12.00C1.

[53]SSA record, pp. 88-95.

[54]*Id*. at p. 117.

[55]*Id*. at pp. 25-26.

about the intensity, persistence and limiting effects of her symptoms were credible to the extent that the statements were not inconsistent with the finding that she has no severe impairment.[56]

    <u>Social functioning</u>.  "Social functioning refers to the claimant's capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.  Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers."[57]  At her initial psychiatric evaluation with Dr. Hernandez, Hernandez reported good support from her boyfriend.[58]  She also reported having a friend to drive her to the grocery store and visiting her sister.[59]  A friend accompanied her to the agency office.[60]  Hernandez reported no problems with family members, friends, neighbors, grocery clerks, landlords, or bus drivers, other than reporting problems with her sister.  She stated that she keeps her visits with her sister short so as to avoid problems.[61]  Hernandez's reported activities suggest no problems.  This evidence constitutes substantial evidence supporting the ALJ's finding that Hernandez is mildly restricted in social activities.

    <u>Concentration, persistence or pace</u>.  "Concentration, persistence or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and

---

[56]*Id*. at p. 14.

[57]20 C.F.R. pt. 404, subpt. B, app. I,§ 12.00C2.

[58]SSA record, p. 174.

[59]*Id*. at p. 92.

[60]*Id*. at p. 116.

[61]*Id*. at p. 117

appropriate completion of tasks commonly found in work settings."[62]  Hernandez consistently

reported problems with concentration in her efforts to obtain disability benefits,[63] but she

reported to Dr. Hernandez that she was improving and that she was doing well in GED school.

She was able to spell "world" backwards on March 3, 2008, during her initial assessment with a

new psychiatrist.[64]  This evidence indicates that Hernandez is no more than mildly restricted in

concentration, persistence or pace, although the state consultative physician opined that

Hernandez is moderately restricted in concentration, persistence or pace.[65]  The ALJ's

determination implicitly rejected that opinion—accepting the finding would have meant that

Hernandez has a severe impairment.[66]  Hernandez maintains the ALJ erred by failing to explain

why he rejected the opinion.

The Commissioner's regulations provide that, "Unless we give a treating source's opinion

controlling weight . . ., we consider all of the following factors in deciding the weight we give to

---

[62]20 C.F.R. pt. 404, subpt. B, app. I,§ 12.00C3.

[63]SSA record, p. 89 (stating in her application documents that she can't concentrate or pay attention); p. 114-16 (describing problems with concentration and memory); pp. 125 & 137 (reporting after her applications were denied that she was unable to concentrate).

[64]*Id*. at p. 289.

[65]*Id*. at p. 187.

[66]*See* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities . . . ."); 20 C.F.R § 416.920a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none" or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities . . . .").

any medical opinion."[67]  The factors include: examining relationship, treatment relationship, supportability, consistency, specialization, and any factor raised by the claimant or someone else which tends to support or contradict the opinion.[68]  Hernandez argued that the ALJ should have discussed these factors because the ALJ "did not profess to have granted 'controlling weight' to an opinion from any of Ms. Hernandez's treating sources. . . ."[69]  This argument fails because the ALJ's opinion shows the ALJ gave controlling weight to the opinions of Hernandez's treating physicians.  For example, one month prior to the hearing, Dr. Steward observed that Hernandez recited serial three's and spelled "world" backwards.[70]  Presenting serial subtraction and backward spelling is a common method of testing a person's attention and concentration.[71]  The inability to count and spell backwards often indicates cognitive deficits, but Hernandez was able to count and spell backwards.  The ALJ included Dr. Steward's test results in his discussion about why Hernandez has a mild limitation in concentration, persistence and pace.  The ALJ also referred to Dr. Hernandez's treatment notes. The ALJ's reliance on Dr. Steward's observation and Dr. Hernandez's treatment notes shows that the ALJ gave controlling weight to the opinions of Hernandez's treating physicians.  The problem for Hernandez is that her treating physicians' observations do not reflect more than a mild restriction in concentration, persistence or pace.

---

[67]20 C.F.R. §§ 404.1527(d), 416.927(d).

[68]*Id*.

[69]Docket entry # 12, p. 9.

[70]SSA record, p. 286.

[71]Marshal F. Folstein, Susan E. Folstein, and P. R. McHugh, *Mini-Mental State: A Practical Method for Grading the Cognitive State of Patients for the Clinician*, 12 J. of Psychiatric Research 189 (1975).

The ALJ was not required to specifically discuss the state consultative physician's assessment of Hernandez's concentration, persistence or pace because he gave the opinions of Hernandez's treating physicians controlling weight.[72]

To the extent Hernandez relies on the medical expert's testimony to support the state consultant's opinion, the medical expert's testimony was inconclusive. The medical expert agreed with Hernandez that a post-hearing psychological exam would be helpful in assessing Hernandez's impairment.[73]  After the hearing, the ALJ asked Dr. Russel Thompson to examine Hernandez.  Dr. Thompson reported that Hernandez was "extremely uncooperative" and that her "[e]ffort was very poor and very likely exaggerated her deficits."[74]  Dr. Thompson stated that Hernandez did not cooperate with attempted memory assessment and refused to complete attempted testing.  Dr. Thompson even asked a young, Spanish-speaking, female doctoral student[75] to administer the testing in an effort to obtain reliable test results, but Hernandez did not cooperate with the student.  Dr. Thompson described Hernandez's behavior as either psychotic or an intentional attempt to misrepresent her mental state, but observed that Hernandez's treating physicians had never observed similar behavior.[76]  The ALJ determined that Dr. Thompson's

---

[72]20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency . . . psychological consultant or other . . . psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the agency].").

[73]SSA record, pp. 31-31.

[74]SSA record, p. 291.

[75]Hernandez was 31 at the time of the examination.

[76]SSA record, p. 293.

report was not a valid and fair assessment of Hernandez's impairments because she

misrepresented her symptoms.

Episodes of decompensation. The Commissioner's regulations provide the following

about episodes of decompensation:

> *Episodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.[77]

The record contains no evidence of decompensation.  To the extent that the post-hearing

psychological examination may evidence decompensation, the ALJ found that the "record does

not indicate that the claimant suffered a traumatic event that would so drastically affect her

functioning level from [the date of the hearing to the date of the examination]."[78]

**Recommendation**.  As the party with the burden, Hernandez was required to show that

depression and ADHD significantly limit her physical or mental ability to do basic work

activities.[79]  Rather than carry that burden, Hernandez may have sabotaged her case by failing to

---

[77]20 C.F.R. pt. 404, subpt. B, app'x I,§ 12.00C4.

[78]SSA record, p. 16.

[79]*See* 20 C.F.R. §§ 404.1520(c), 416.921(a).  "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (citation omitted; alteration

cooperate with Dr. Thompson.  Substantial evidence supports the ALJ's step two determination.
The ALJ applied the proper standards.  For these reasons, I recommend affirming the
Commissioner's decision.

**Instructions for Service and Notice of Right to Object/Appeal**.  The United States
District Clerk shall serve a copy of this report and recommendation on all parties by either (1)
electronic transmittal to all parties represented by attorneys registered as a "filing user" with the
clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt
requested.  Written objections to this report and recommendation must be filed within 14 days
after being served with a copy of same, unless this time period is modified by the district court.[80]
Such party shall file the objections with the clerk of the court, and serve the objections on all
other parties and the magistrate judge.  A party filing objections must specifically identify those
findings, conclusions or recommendations to which objections are being made and the basis for
such objections; the district court need not consider frivolous, conclusive or general objections.
A party's failure to file written objections to the proposed findings, conclusions and
recommendations contained in this report shall bar the party from a *de novo* determination by the
district court.[81]  Additionally, failure to file timely written objections to the proposed findings,
conclusions and recommendations contained in this report and recommendation shall bar the
aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to

included).

[80]28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[81]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

proposed factual findings and legal conclusions accepted by the district court.[82]

      **SIGNED** on August 6, 2010.


*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[82]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).